IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Case No. 3:10-cr-00032-1 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| RODNEY WAYNE BARNES, | ) | By: Norman K. Moon |
| Petitioner. | ) | United States District Judge |

Petitioner Rodney Wayne Barnes, a federal inmate proceeding *pro se*, filed this motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255, challenging his 264-month sentence for conspiring to distribute cocaine base, heroin, and cocaine hydrochloride, as well as conspiring to commit money laundering.[1] Barnes alleges violations of his right to due process and that counsel provided ineffective assistance. The United States has filed a motion to dismiss, and Barnes has responded, making this matter ripe for consideration. I first note that Barnes waived his right to collaterally attack his sentence and that the record of the Rule 11 plea colloquy reflects that this waiver was knowing and voluntary. Accordingly, I conclude that Barnes has waived his right to collaterally attack his sentence on the grounds of a violation of his Fifth Amendment right to due process. Furthermore, I conclude that Barnes has failed to demonstrate that he was prejudiced by counsel's allegedly deficient performance. Therefore, I will grant the government's motion to dismiss.

I.

. On October 13, 2010, Barnes and seven co-defendants were charged in a five count superseding indictment handed down by a federal jury sitting in Charlottesville, Virginia. Count One alleged that, between June 2009 and July 2010, Barnes conspired to distribute 50

---

[1] Pursuant to an order regarding a motion for sentence reduction under 18 U.S.C. § 3583(c)(2), I reduced Barnes' sentence from 264 months to 212 months, effective November 1, 2015.

grams or more of cocaine base, at least 100 grams of heroin, and 500 grams or more of a detectable amount of cocaine hydrochloride, in violation of 21 U.S.C. § 846. Count Two alleged that, between June 2009 and July 2010, Barnes conspired to launder money in violation of 18 U.S.C. § 1956(h). Counts Three, Four, and Five alleged that, in June and July 2010, Barnes distributed a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a). On November 9, 2010, the United States Attorney's Office filed an enhancement pursuant to 21 U.S.C. § 851(a)(1), informing Barnes that he was subject to a higher statutory maximum term of imprisonment and greater maximum fine, due to his prior conviction for a felony drug offense.[2]

On October 15, 2010, Barnes was arraigned, with counsel present, and pleaded not guilty to all charges. On March 2, 2011, a plea agreement was filed with the court pursuant to Rule 11 of the Federal Rules of Criminal Procedure, and was fully endorsed by Barnes, his counsel, and the Assistant United States Attorney. Pursuant to the agreement, Barnes pleaded guilty to Counts One and Two of the indictment. The plea agreement further provided that, at the sentencing hearing, the United States would move to dismiss the remaining counts, recommend a sentence within the applicable guideline range, and recommend a three level reduction for acceptance of responsibility.

On March 2, 2011, I conducted Barnes' plea hearing and found his plea to be knowing and voluntary. On August 31, 2011, I conducted Barnes' sentencing hearing, where Barnes was present with counsel. Barnes objected to the Presentence Investigation Report ("PSR") on the ground that the probation officer used an inaccurate method to calculate drug weight. Barnes argued that the probation officer's calculations resulted in the same drugs being "double or triple counted against Mr. Barnes." (Dkt. No. 306, at 3). By adding the drug weights for each

---

[2] The prior felony drug offense was Barnes' conviction for distribution of a controlled substance on January 11, 2001, with an offense date of April 6, 1999.

co-defendant within the conspiracy, the probation officer calculated a total quantity of 7.4 kilograms of cocaine base (26,450 kilograms of marijuana), 1.2 kilograms of heroin (1.2 kilograms of marijuana), and 1 kilogram of cocaine hydrocholoride (200 kilograms of marijuana). Thereafter, the probation officer determined that "understanding that some of the drug quantities may have involved several co-defendants and their drug weights calculated accordingly," he attributed a total drug quantity of between 10,000 kilograms and 30,000 kilograms of marijuana. (Dkt. No. 293, at 8-9). In contrast, Barnes indicated that using the figures provided from co-defendants' proffers, he calculated "168 grams of crack, 168 grams of heroin, and 84 grams of powder" by one method (yielding an equivalency of 785 kilograms of marijuana), and "1,207 grams of crack and 340 grams of heroin" by a different method (yielding an equivalency of 4,650 kilograms of marijuana). (Dkt. No. 306, at 5).

Barnes also objected to the PSR regarding the ratio applied between crack and powder cocaine, and the proper mandatory minimum sentence. Barnes argued that when translating drug weight, the court should use a 1-to-1 ratio between crack and powder cocaine, and not an 18-to1 ratio. (Dkt. No. 306, at 6). Barnes asked the court to adopt the minimum mandatory sentences contained in the Fair Sentencing Act, subjecting him to a 10-year minimum mandatory sentence, instead of a 20-year minimum mandatory sentence. (Dkt. No. 306, at 8).

The PSR calculated Barnes' base offense level as 36, with a criminal history category of IV. The PSR recommended a four level increase for his role as a leader in the conspiracy, and a three level decrease for acceptance of responsibility, resulting in a total offense level of 37. I overruled Barnes' objections to the PSR and adopted the PSR, but found the mandatory minimum sentence of imprisonment was ten years. (Dkt. No. 297). Based on a total offense level of 37 and a criminal history category of IV, the advisory guideline range of imprisonment

3

was 292 to 365 months. U.S.S.G. Chapter 5, Part A. The government recommended a sentence of 292 months. I imposed a sentence of 264 months, consisting of 264 months on Count One, and 240 months on Count Two, served concurrently.

## II.

To state a claim for relief under § 2255, a petitioner must prove that one of the following occurred: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Barnes bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965); *Hall v. United States*, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998).

## III.

Barnes claims in his § 2255 motion, as amended, that the district court relied on inaccurate drug weight information when determining his sentence, in violation of his Fifth Amendment right to due process.[3] Barnes further claims that counsel provided ineffective assistance by (a) incorrectly advising him that his sentence would not be determined by drug weight; (b) failing to argue on direct appeal that the sentencing court used inaccurate information to calculate his final offense level; and (c) failing to properly advise Barnes regarding the government's ability to file a second 851 enhancement.

I conclude that Barnes has waived his right to collaterally attack his sentence on the grounds of a violation of his Fifth Amendment right to due process. Furthermore, I conclude

---

[3] Barnes filed three amendments to his § 2255 motion. He filed his original § 2255 motion on June 20, 2013. Thereafter, on September 4, 2013, he filed a motion to supplement the pleadings (Dkt. No. 356) to include a copy of a lab report, which the court granted. On February 5, 2014, he filed a second motion to amend his § 2255 (Dkt. No. 370), which the court also granted. Finally, on February 5, 2015, he filed a third motion to amend his § 2255 (Dkt. No. 414). I will grant Barnes' third motion to amend, and have addressed his additional claims in this opinion.

4

that Barnes' ineffective assistance of counsel claims do not meet both the performance and prejudice prongs of *Strickland v. Washington*, 466 U.S. 668, 669 (1984).  Therefore, I will grant the government's motion to dismiss.

### A. Alleged Due Process Violation Regarding Inaccurate Drug Weight Information

Barnes claims that the district court violated his Fifth Amendment right to due process by relying on inaccurate information in determining his sentence.  Specifically, Barnes argues that he did not meet co-defendant Twala Johnson until March 2010, and provides a letter from Johnson stating she was incarcerated during the period that the government claimed she dealt drugs with him, from March 2009 through October 2009.  (Dkt. No. 344-2, at 26).  Thus, Barnes argues that the drug weights obtained from alleged drug dealing with Twala Johnson were inaccurate.  Barnes also provides affidavits from co-defendants Kasheen Osborne and Malika Poole, stating that Barnes did not obtain any crack cocaine from Kasheen Osborne in July 2010.  (Dkt. No. 344-2, at 26).  However, Barnes knowingly and voluntarily waived his right to attack his plea and sentence, and this claim falls within the scope of that waiver. Therefore, I will dismiss this claim.

It is settled law in this circuit that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005).  Waivers of collateral review are analyzed under a two-part analysis in which both the validity and the scope of the waiver are considered.  *See, e.g., United States v. Attar*, 38 F.3d 727, 731-33 (4th Cir. 1994) (holding that a waiver will be enforced if the record establishes that the waiver is valid and that the issue being appealed is within the scope of the waiver).  The validity of a waiver "depends on whether the defendant knowingly and intelligently agreed to waive the right."  *Id.* at 731-32.  "[I]n the

absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Lemaster*, 403 F.3d at 221-22; *see also United States v. Brown*, 232 F.3d 399, 405-06 (4th Cir. 2000) (holding that a defendant's statements during the plea colloquy and evidence that he discussed the terms of the waiver provision with counsel and fully understood them provide powerful evidence that the waiver is valid). If the court determines that a petitioner's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. *Lemaster*, 403 F.3d at 220 (internal quotations and citations omitted).

In this case, the record establishes that Barnes knowingly and intelligently entered a valid guilty plea and waived his right to collaterally attack his sentence, including any proceeding brought under § 2255. In the Rule 11 plea hearing, I specifically asked Barnes questions about his plea agreement, including the appellate waiver contained therein. Barnes indicated that he read and understood the plea agreement before he signed it, and he was voluntary giving up his right to file a writ of habeas corpus or otherwise attack the judgment and sentence in this case. (Dkt. No. 307, at 20-21).[4] Furthermore, Barnes signed and initialed each page of the plea agreement, which stated:

> I waive any right I may have to collaterally attack, in any future proceeding, any order issued in this matter, unless such attack is based on ineffective assistance of counsel, and agree I will not file any document which seeks to disturb any such order, unless such filing is based on ineffective assistance of counsel.

(Dkt. No. 190, at 8). I made findings on the record at the plea hearing that Barnes was competent to plead. Accordingly, I conclude that Barnes' claims regarding the court's alleged

---

[4] Barnes does not claim that he did not understand the advisements I gave him at the Rule 11 Plea Hearing.

reliance on inaccurate drug weights fall within the scope of his collateral attack waivers and, thus, these claims are not cognizable in a § 2255 motion.[5] Accordingly, I will dismiss these claims.

B. **Ineffective Assistance of Counsel Claims**

To establish a claim of ineffective assistance of counsel, petitioner must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. *Strickland*, 466 U.S. at 669; *see also Williams v. Taylor*, 529 U.S. 362 (2000). Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *see also Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983); *Marzullo v. Maryland*, 561 F.2d 540 (4th Cir. 1977).

In addition to proving deficient performance, a petitioner asserting ineffective assistance must prove that he suffered prejudice as a result of his counsel's deficient performance; that is, petitioner must show there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. In the plea context, the *Strickland* prejudice inquiry focuses on "whether counsel's constitutionally

---

[5] A sentencing court may consider relevant information without regard to its admissibility under the Federal Rules of Evidence, provided the evidence has "sufficient indicia of reliability to support its probable accuracy," U.S.S.G. § 6A1.3(a). Importantly, Barnes has not shown that he was sentenced using inaccurate information. *See United States v. Lee,* 540 F.2d 1205, 1210-1211 (4th Cir. Md. 1976) (noting that Supreme Court precedents "recognize a due process right to be sentenced only on information which is accurate."). Even if the disputed drug weights involving Twala Johnson and Kasheen Osborne were removed from the calculation entirely, the drug weight attributed to Barnes in the PSR would exceed 10,000 kilograms. *See* Dkt. No. 291, at 3 (Barnes' sentencing memorandum sets forth the drug weights for each co-defendant, as calculated by the probation officer.). Thus, the drug weight range for sentencing would remain unchanged. The government indicated that at least 15 individuals were involved in this conspiracy, and that Barnes clearly acted as the leader. (Dkt. No. 306, at 10-11). Indeed, I considered the issue of drug weight, including defense counsel's arguments, at sentencing and stated "the evidence clearly preponderates that there were more than 10,000 [kilograms]." (Dkt. No. 306, at 30).

7

Case 3:10-cr-00032-NKM   Document 430   Filed 04/13/15   Page 7 of 12   Pageid#: 2167

ineffective performance affected the outcome of the plea process." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985) "([I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.") The petitioner "bears the burden of proving *Strickland* prejudice." *Fields*, 956 F.2d at 1297 (citing *Hutchins*, 724 F.2d at 1430-31). If the petitioner fails to meet this burden of proving prejudice, a "reviewing court need not consider the performance prong." *Fields*, 956 F.2d at 1290 (citing *Strickland*, 466 U.S. at 697). In this case, Barnes has not demonstrated prejudice, and thus he has not shown ineffective assistance of counsel.

### 1. Counsel's Alleged Advice Regarding Drug Weight

Barnes claims that counsel incorrectly advised him that his sentence would not be determined by drug weight. However, this claim fails because regardless of whether counsel incorrectly advised Barnes on how drug weight would impact the severity of his sentence, Barnes was not prejudiced by this advice.[6] I correctly advised Barnes regarding drug weight, or the potential severity of Barnes' sentence at the Rule 11 hearing. *See United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir. Va. 1992) ("if the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must

---

[6] In support of his claim, Barnes attached a letter from his counsel dated March 2, 2011. His counsel writes, "The other thing I want to clear up is any misunderstanding about the sentencing guidelines. Your guidelines are not going to be determined by drug weight, so whether the conspiracy involved 500 grams of cocaine is irrelevant." (Dkt. No. 344-3, at 4). However, counsel continues, explaining that, "as a career offender convicted of a drug offense for which the maximum sentence is life, your base offense level is 37, regardless of drug weight." Counsel further clarifies that if "we can get the…career offender designation" dropped, then Barnes would start out at a base offense level of 30, based on drug weight of 50-150 grams of crack. Thus, while Barnes may have misunderstood his counsel, it is certainly not clear from the record submitted that his counsel had an incorrect understanding of the applicable law. Indeed, as discussed below, counsel devoted significant time at the sentencing hearing to debating the appropriate method for calculating drug weight.

8

be able to rely on the subsequent dialogue between the court and defendant."). I informed Barnes that his sentencing range for Count One, due to 21 U.S.C § 851 enhancement, was a mandatory minimum of 20 years to a maximum of life in prison.[7] (Dkt. No. 307, at 12-13). I also informed Barnes that his sentencing range for Count Two was up to 20 years in prison. (Dkt. No. 307, at 14). Under oath, Barnes stated that he understood the charge and potential penalties. (Dkt. No. 307, at 14). He also indicated that he understood that I had the authority to impose a sentence that was more or less severe than the sentencing guidelines proposed, and that he could not withdraw his plea even if his sentence was more severe than he expected. In light of the Rule 11 proceeding, Barnes has failed to plausibly show prejudice from his counsel's alleged failure to advise him that drug weight would impact his sentence. Thus, Barnes has failed to carry his burden to show prejudice under *Strickland* and I will dismiss this claim.[8]

   2.  **Counsel's Argument on Direct Appeal**

Barnes claims that counsel was ineffective for failing to argue on direct appeal that the sentencing court used inaccurate information to calculate his base offense level of 36. Specifically, Barnes argues that the court relied on false information contained in the proffers of co-defendants David Payne, Keith Marks, and Twala Johnson. Barnes provides a letter from Johnson stating she was incarcerated during the period that the government claimed she dealt

---

[7] At the sentencing hearing, on the government's request, I found the mandatory minimum was 10 years, instead of 20 years, due to the new mandatory minimums contained in the Fair Sentencing Act for individuals sentenced after August 2, 2010. (Dkt. No. 306, at 22, 33).

[8] Barnes alleges a claim in his § 2255 that a "waiver of appeal does not bar colorable constitutional [c]hallenge[s] to the voluntariness of a guilty plea" and "had [he] known [counsel] was misadvising him as to drug weight being used to determine his guideline sentence, [he] would not have entered into the agreement." (Dkt. No. 344, at 8). However, this claim merely restates Barnes' claim that counsel incorrectly advised him that his sentence would not be determined by drug weight. Thus, I will dismiss this claim for the reasons discussed above.

9

drugs with Barnes, from March 2009 through October 2009.  The government argues that counsel was not ineffective for failing to specifically challenge this on direct appeal because it would have been barred by his appeal waiver, and likely have failed on the merits.

Barnes' claim fails because counsel did not act unreasonably.  Counsel is not required to raise on appeal every non-frivolous issue that a defendant requests.  *Jones v. Barnes*, 463 U.S. 745, 754 (1983); *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000).  It is within the scope of reasonable professional judgment to "select from among [nonfrivolous claims] in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (opining that "it is difficult to demonstrate that counsel was incompetent" in failing to raise a particular appellate claim).  Counsel argued on appeal that the district court committed procedural error in calculating the drug quantity attributable to him, including failing to conduct an evidentiary hearing, and failing to explain its methodology on the record.  Barnes cannot overcome the presumption that counsel provided effective assistance.  Therefore, I will dismiss this claim.

### 3. Counsel's Alleged Failure to Advise Barnes Regarding the § 851 Enhancement

Barnes argues that counsel failed to correctly advise him regarding the government's ability to file a second 851 enhancement.  During the guilty plea hearing, Barnes' counsel stated the following:

> I would point out to the Court that this plea agreement actually provides a genuine bargain benefit for Mr. Barnes, insomuch as the government could have filed more than one 851 enhancement, which would have subjected him to a minimum mandatory sentence of life.  So even though this makes him subject to a 20-year minimum mandatory, the government agrees not to seek any additional enhancements pursuant to 21 U.S.C. 851.

(Dkt. No. 307, at 17-18).  However, subsequent to Barnes' plea, the government asked to put the following on the record:

> "[Barnes' counsel] made a representation that there was a benefit of the plea agreement to Mr. Barnes in that we chose not to file a second 851. I wanted to make it very clear, from the government's perspective, there wasn't another 851….In reviewing his record, we were not able to discover that we had the ability to file two 851's…therefore making his mandatory minimum the same as I had represented before that, 20 to life."

(Dkt. No. 307, at 29). Thereafter, I asked "Does everyone understand that? It doesn't change anything, I take it." (Dkt. No. 307, at 29). Though provided the opportunity to be heard, Barnes expressed no objection.

Barnes complains that, at the end of the plea hearing, he discovered that his basis for accepting the plea (i.e. the threat of filing a second 851 enhancement) did not actually exist. Barnes states that he would not have pleaded guilty if he had been correctly advised and "not scared into accepting a plea." (Dkt. No. 414-1). However, the transcript makes clear that, prior to the conclusion of the Rule 11 hearing, Barnes was clearly aware of the government's position regarding a second 851 enhancement. He was questioned by the court regarding whether the government's statements "changed anything" and had an opportunity to be heard by the court, or confer with his counsel. Thus, regardless of whether counsel incorrectly advised Barnes on the government's ability to file a second 851 enhancement,[9] Barnes has not demonstrated that he was prejudiced by this advice because he was made aware that the government did not believe it could file the enhancement at the plea hearing. *See Lambey*, 974 F.2d at 1395.

Furthermore, I conclude that Barnes has not demonstrated a reasonable probability that, but for counsel's alleged error, he would not have pleaded guilty, but would have gone to trial. By pleading guilty, even excluding the 851 enhancement, Barnes still received the benefit of a 3-level reduction for acceptance of responsibility, dismissal of Counts Three, Four, and Five,

---

[9] Barnes attached to his § 2255 motion a letter from his counsel, in which counsel explains that, under counsel's interpretation, the applicable law does permit a second 851 enhancement due to Barnes prior felony drug convictions. (Dkt. No. 344-3, at 3-4.)

11

and the government's agreement to recommend a sentence within the applicable guideline range. Without the plea agreement, Barnes would have faced additional exposure to incarceration, fines, supervised release, and special assessments on the remaining counts against him. Indeed, just based on the two counts to which Barnes pleaded guilty, his guideline calculations resulted in a range of 292 to 365 months. Clearly, his sentence of 264 months on Count One, served concurrently with 240 months on Count Two was a benefit to Barnes. Finally, as summarized by the United States during the sentencing hearing, the evidence against Barnes was well beyond the minimum 10,000 kilograms of marijuana. Thus, I will dismiss this claim of ineffective assistance.

## IV.

For the reasons stated herein, I will grant the government's motion to dismiss.

**ENTER:** This 13th day of April, 2015.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

12

Case 3:10-cr-00032-NKM   Document 430   Filed 04/13/15   Page 12 of 12   Pageid#: 2172